**Wayne E. CRIM, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 10987-M.**

United States District Court
S. D. Florida,
Miami Division.

July 12, 1962.

M. S. Marlin, Miami, Fla., for plaintiff.

Edward Boardman, U. S. Atty., Lloyd Bates, Jr., Miami, Fla., of counsel for defendant.

DYER, District Judge.

This cause, brought under the Federal Tort Claims Act, came on for trial, and the Court, having considered the pleadings and testimony of witnesses and experts and being fully advised in the premises, makes the following findings of fact:

### FINDINGS OF FACT

1. At all times pertinent herein the Veterans Administration was and is an agency of the United States of America and maintains and operates a hospital in the City of Coral Gables, Florida.

2. The Plaintiff, WAYNE CRIM, is an honorably discharged veteran of service with the armed forces of the United States.

3. Plaintiff CRIM suffered from a service connected disability first diagnosed as pulmonary tuberculosis in October, 1948, at the Veterans Administration Hospital, Indianapolis, at which time there were present bilateral cavities. A pneumothorax was performed on the right side and the lung collapsed and thereafter he received on various occasions medical care and treatment for this condition. On June 2, 1952, a segmental resection of the left upper lobe was performed on the Plaintiff at the Veterans Administration Hospital in Dayton, Ohio. Thereafter the Plaintiff continued to receive medical care and treatment, both as an in-patient and out-patient at Veterans Administration's Hospitals.

4. The Plaintiff was admitted from the out-patient department to the Veterans Administration Hospital at Coral Gables, Florida, on September 10, 1959, because of positive sputum. After a course of non-surgical treatment the

Plaintiff was discharged on April 14, 1960.

5. The Plaintiff was re-admitted to the Veterans Administration Hospital in Coral Gables on October 28, 1960, with hemoptysis or hemorrhaging and with evidence of cavity in the left upper lobe. On November 22, 1960, a bronchoscopy was performed. On February 13, 1961, a left side pneumonectomy was performed upon the Plaintiff by members of the surgical staff of that hospital, acting within the course and scope of their employment with the United States. The surgeon performing the operation was Dr. Mark Wolcott, Chief of Surgery and a qualified thoracic surgeon, who was assisted in the operation by Dr. Walter Shaw and Dr. Curtis Wherry.

6. The operation performed on February 13, 1961, was necessary to preserve and protect the Plaintiff's health.

7. Prior to the operation the Plaintiff had a normal speaking voice, but immediately following it his voice was hoarse and weaker than normal. During the operation the left recurrent laryngeal nerve was severed. This nerve is the motor producing power for the left vocal cord. The result was that the vocal cord is permanently paralyzed in an abducted position.

8. In performing the operation the old incision on Plaintiff's previous pneumonectomy was opened for its full length and extended both posteriorly and anteriorly and a segment of the seventh rib was removed. The chest cavity was then entered, and it was observed that, because of extremely dense fibrous tissue and adhesions to the lung over almost its entire surface, an extra-pleural type of pneumonectomy would have to be performed in order to accomplish the mission of the operation. The usual surgical planes were not present to work on. Both sharp (scissors) and blunt (use of fingers) resection were necessary. Extra-pleural pneumonectomy and blunt and sharp resection are acceptable under standard medical procedures observed by thoracic surgeons under the circumstances facing Dr. Wolcott.

9. The line of dense fibrotic inflamed pleura over the arch of the aorta and the lining of the lung could not be demarked, and the fibrotic pleura had to be removed with the lung. This was attempted by the use of the surgeon's fingers, but being unable to do so sharp instruments had to be employed. In the vicinity of the arch of the aorta the left recurrent laryngeal nerve arises from the vagus nerve. The chief surgeon looked for these nerves and particularly the recurrent laryngeal nerve, but because it was so encased in scar tissue it was impossible for him to identify it. He was dealing with a severe diseased process in the region. Moreover, where fibrotic tissue is involved, the nerve course may not be constant but may be pulled out of normal position. In order to avoid injury to the nerve, Dr. Wolcott cut as close as possible to the lung, but he was obliged to remove all of the lung tissue because of postoperative complications that would result if any of the diseased tissue were left.

11. While the risk of injury to the recurrent laryngeal nerve was increased because it was involved in scar tissue, it was a risk that had to be taken and Dr. Wolcott, appreciating that the nerve was in jeopardy, was compelled to sacrifice it if unable to locate and identify it in order to successfully perform the pneumonectomy.

12. The operation was carried out in every respect in a manner consistent with and acceptable under standards observed by competent thoracic surgeons.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and subject matter of this cause.

2. Under standards of medical procedure acceptable to qualified thoracic surgeons, the operation performed by Dr. Wolcott was performed in a competent and skillful manner.

3. The Plaintiff has failed to sustain his burden of proof of negligence on the part of employees of the Defendant, UNITED STATES OF AMERICA.

An appropriate judgment will be entered accordingly.